## GEORGE E. CURRENT et al., Appellants, v. WILLIAM W. CURRENT et al.

### Division One, June 29, 1912.

1. **WILL CONTEST: Undue Influence: Old Man: Easily Angered: False Reports by Devisees.** A will of an old man, high-tempered and easily angered, cannot be set aside on the theory that some one or more of the devisees made false statements to him regarding his disinherited children, which caused him to become unreasonable and crazed in his feelings and conduct towards them, and caused him to destroy an existing will and make a new one disinheriting them, if (1) the evidence fails to show that the devisees or any of them circulated or made any false statements concerning such disinherited children, and fails to show the statements, if made, were not true; or if (2) the evidence wholly fails to show that said statements were sufficient to or did in any manner influence the testator in making his will; or if (3) the great weight of the evidence shows that the new will was the same as the old except as to the omission of one contestant as residuary legatee.

2. ———: ———: **New Will: No Change.** Where the two wills, made only a few days apart, were the same in all respects except that in the first the testator named one of the contestants as residuary legatee but omitted to so name him in the second, the first naming only five of his thirteen children as devisees and the second only four, the others being named but given only one dollar each, there must be substantial evidence that

testator was of unsound mind or that the change in the will was brought about by undue influence exercised upon the testator, before the will can be set aside.

3. ——: ——: **High and Unreasonable Temper.** Although the evidence may show that testator was a man of high temper, and when aroused was unreasonable and even crazy, yet if it fails to show that he was in that condition of mind at the time he made the will, it cannot be set aside as the product of an unsound mind.

Appeal from Schuyler Circuit Court.—*Hon. Nat M. Shelton,* Judge.

AFFIRMED.

*Higbee & Mills* for appellants.

(1) The court erred in directing a verdict for the proponents of the will. There was substantial evidence that in the interval between July 25, and the making of the second will, William Lucas, the husband of one of the beneficiaries, Mary Lucas, and William Current, and other beneficiaries, had, by means of false accusations against George Current, Mrs. Hess and Mrs. Eason, poisoned the testator's mind against these children, and thus fraudulently induced him to make a new will by which he disinherited them. The testator's relation with these children had always been friendly. He had at least named George and Mrs. Hess among his residuary legatees by his first will, and probably Mrs. Eason. No other cause appears for his unreasonably and unnaturally disinheriting them, than the false accusations they had brought to their father about them. This, with the gross inequality in the disposition of his property, shifted the burden of proof, and the will is presumably void, and the burden of upholding its fairness and validity was upon the proponents. Gay v. Gilfillan, 92 Mo. 250; Bradford v. Blossom, 207 Mo. 231; Roberts v. Bartlett, 190 Mo. 680. (2) Mr. Morris rewrote the

will at Current's direction, intending only to omit George from the residuary legatees and give him one dollar. Both attesting witnesses say there were two daughters among the residuary legatees in the first will. Hence the will is not as Current intended and understood it, and it is not his will. Cowan v. Shaver, 197 Mo 203; Bradford v. Blossom, 207 Mo. 177.

*S. W. Mills* and *A. D. Morris* for respondents.

(1)  There was no substantial evidence of the incapacity of testator to make the will nor of any undue influence over him at the time of making the will, and it became the duty of the court to direct a verdict for the proponents. Southworth v. Southworth, 173 Mo. 74; Roberts v. Bartlett, 190 Mo. 680; Archambault v. Blanchard, 198 Mo. 384; Conner v. Skaggs, 213 Mo. 334.  (2)  The testator in this case was competent to make the will in question, because there was no evidence of undue influence at the time of making the will; he had sufficient intelligence to understand the act he was performing; he readily told of all the property that he possessed; he aptly named all the objects of his bounty.  Hamon v. Hamon, 180 Mo. 685; Conner v. Skaggs, 213 Mo. 334.  (3)  There is no substantial evidence in the proof of undue influence, overpersuasion, fraud or. deceit, in the procurement or shaping of the will, and such influence to invalidate the will must have so dominated the mind of the testator at the time of its execution, that it was not in fact his will but that of the beneficiary.  Crowson v. Crowson, 172 Mo. 692; Sehr v. Lindemann, 153 Mo. 276. (4)  Concede the fact that testator had a violent temper and had had trouble with his children and in the height of his bitterness determined to disinherit them and even drove them from his home, none of this is evidence of an insane delusion, where there is no evidence that he was in a paroxysm and rage when the

will was made.  Conner v. Skaggs, 213 Mo. 334.  (5)
Mere opinion of witnesses unaccompanied by any tes-
timony showing any act or particular fact evidencing
incapacity or undue influence do not make out a case
of incompetency when the testimony is that he knew
what he was doing and to whom he was giving his
property. Southworth v. Southworth, 173 Mo. 74;
Wood v. Carpenter, 166 Mo. 481.

WOODSON, J.—This suit was begun in the cir-
cuit court of Schuyler county to contest the will of
Eli M. Current, who died in February, 1909.

He was twice married, and had by the first wife
four children, namely:  Alonzo Current, Lydia A.
Current (both of whom were dead at the time of the
testator's demise), Nancy Wall and Matthew Current;
and there were eleven children by the second wife,
namely:  William, Louis, Leonard, George and Ber-
tha  Current,  and  Amanda  Sweet  (now  Warren),
Sarah M. Eason (wife of John Eason), Addie Lucas
(wife of William Lucas), Mary E. Lucas (wife of
—— Lucas), Melva Hess (wife of —— Hess) and
Norah Lucas (wife of —— Lucas), plaintiffs.

Alonzo Current left surviving him  four children,
namely, William W., Samuel, Ernest and Earl Cur-
rent, defendants.

In July, 1907, the testator made a former will by
which he devised all of his estate to his four sons,
Matthew, Lewis, William and George Current, and to
his daughter, Mary Lucas, and there was some evi-
dence tending to show that Sarah M. Eason was also
made one of the residuary devisees therein.  All the
other children were given one dollar each.

On August 3, 1907, the testator destroyed the first
will and then made and published the one in question,
by which he devised all of his estate to his three sons,
Matthew, Lewis and William Current, and to his
daughter Mary A. Lucas.  The remaining children

were given one dollar each. William was named as executor of the will, without bond.

The grounds of the contest, as alleged in the petition, were the unsound mind of the testator and undue influence exercised by the defendants over his mind.

At the conclusion of the evidence introduced on the part of the contestants, the court at the request of the defendants directed the jury to find that the will propounded was the last will and testament of Eli M. Current, the testator, to which the contestants duly objected and excepted, and in pursuance to the direction of the court the jury returned a verdict sustaining the will. In due time and in proper manner, the contestants appealed the cause to this court.

The substance of the evidence introduced by the contestants to prove the unsoundness of mind of the testator, and the undue influence exercised over him, is brief, and is as follows:

On August 3, 1907, the testator destroyed his first will and at the same time made the one in question.

Mr. A. D. Morris, counsel in the case, drew both wills, and testified that the testator was of sound mind, named his children in the order stated in the will, understood perfectly the nature and character of his property and where located, and directed its disposition in the terms stated in the will, and that the only change made in the last will from the first was the omission of George's name from the residuary clause in the last will, and to give him instead thereof one dollar.

But Mr. Hayes, one of the attesting witnesses, testified that according to his recollection Mrs. Hess was one of the residuary legatees in the first will, and Mr. Walton testified that according to his recollection there were two daughters named in the first will as residuary legatees, and only one in the last.

For several years prior to the execution of the first will, John Eason and his wife Sarah, a daughter of the testator, resided on Mr. Current's farm, and the latter and his wife lived with them. The testator was very fond of Mrs. Eason, and was on friendly terms with all of his children except Mrs. Warren. It seems that he was especially fond of George, who was, as before stated, named in the former will as one of the residuary legatees.

The evidence for the contestants also tended to show that about July 26, 1907, the testator went to visit his daughter Melva Hess, who resided across the State line in Iowa. Their relations were cordial. He remained there two or three days and while there met his wife, who was returning from Ottumwa, where she had been visiting a daughter, Mrs. Lucas. On July 28th, the testator and his wife returned to the home of John Eason, accompanied by Mrs. Hess, who visited with them a part of that day. His and her relations were also friendly and he told her that he intended to visit her oftener then he had done in the past.

That on July 30th, William Current sent his son for the testator, who returned with the son and spent there a few hours, and returned to his home with the Easons. That the next morning he appeared to be very angry and threatened to strike John Eason saying he had been telling lies on him and told Mrs. Eason that she was just as "onry" as John was.

That in the summer of 1907, George Current put up a part of the testator's hay and took his meals with his father and the Easons. During that time the testator told George that William Lucas said to him, that he, George, had a revolver in his pocket and made an attempt to shoot him, Lucas. There was some other evidence tending to corroborate this revolver incident.

That Mrs. Hess did not see the testator again until about the first of September following, when she went over to see her mother, who was sick. The testator refused to speak to her and when she offered to shake hands with him he struck her on the shoulder with his elbow and said, "Go on about your business, I have your word for it," and added, "Didn't you write me a letter to come up and visit you and then tell others you didn't want to see me?" That in May, 1907, Mrs. Hess had written the testator to come and see her. That on May 30th her brother Lewis came to see her and she said, "Lewis, I wrote to father to come up and visit me," and she said, "Why did he not come?" In reply he said, "Well, I guess you don't care much that he did not come, do you?"

There was evidence also tending to show that, at the time of the execution of the will, the testator was in poor health, high tempered and when angered was unreasonable, and as some of the witnesses said, he was crazy.

I. I have stated the substance of all the material evidence contained in the record tending to prove that Eli M. Current was of unsound mind at the time he made and published the will in controversy, and which tends to show that he was unduly influenced in making the same. And in doing so, I have stated the evidence as strongly, if not more strongly, in favor of the appellants than the record warrants.

The position of counsel for appellants is not made perfectly clear, but if we correctly understand them it is this: That the evidence shows that someone or more of the beneficiaries under the will made false statements to the testator regarding the contestants and especially as to George Current, Sarah Eason and Melva Hess, which made him very angry at them; that being a man of very high temper and easily angered, he became unreasonable and crazed in his feel-

ings and conduct toward them, which induced him to destroy the old will and execute the new one and thereby disinherited them.

This position is untenable for several reasons.

(a). Because the evidence fails to show that the respondents circulated or made any false statements to the testator regarding the appellants, or any of them. Admitting that the evidence shows that the devisees made the statements to the testator imputed to them regarding the contestants, yet there is not a scintilla of evidence tending to show that those statements were not true in fact. No one, not even the parties to whom or of whom they were supposed to have been spoken, denied their truthfulness.

(b). But independent of that, concede that said statements were made as charged, and that they were false in fact, nevertheless, the evidence wholly fails to show that said statements were sufficient to, or did in any manner, influence the testator in the least in making his last will and testament.

(c). Moreover, the great weight of the evidence showed that the new will was the same as the old, except the former omitted George as one of the residuary legatees while the latter named him as such.

While it is true that there is some evidence tending to show that either Mrs. Hess or Mrs. Eason were named residuary legatees under the first will made, but the great preponderance of it shows that neither of them were so named. The attorney who drew both instruments, and who knew better than any other one their contents, states unequivocally that the only difference there was between the two instruments was that the first will named George Current as a residuary legatee, while the last omitted his name from the residuary clause.

Under this view of the record, there was no substantial evidence introduced tending to show that the

testator was of unsound mind at the time he made the will in controversy, or that the beneficiaries thereunder, or anyone else, exercised any undue influence over his mind at that time. Upon that state of the record it was clearly the duty of the trial court to instruct the jury to return a verdict sustaining the will. [Southworth v. Southworth, 173 Mo. 59; Roberts v. Bartlett, 190 Mo. 680; Archambault v. Blanchard, 198 Mo. 384; Conner v Skaggs, 213 Mo. 334.]

It is also held in the cases of Hamon v. Hamon, 180 Mo. 685, and Conner v. Skaggs, supra, that where there was no evidence of undue influence exercised over the mind of the testator at the time of making the will, or of mental incapacity, the will should be sustained if the evidence showed that he had sufficient intelligence to understand the act he was performing, and understood the nature and character of the property he possessed, as well as the natural objects of his bounty.

Under the evidence in this case, there can be no question but what the testator understood perfectly all of those things.

II. The strongest view that counsel for appellants can take of this case is, that the evidence tended to show that the testator was a man of high temper, and when aroused he was unreasonable, and, as some of the witnesses said, crazy. But there is no evidence that he was in that condition at the time he made this will.

In Conner v. Skaggs, supra, this court held that the fact that the testator had a violent temper and had had trouble with his children and in the height of his bitterness determined to disinherit them and even drove them from his home, was not evidence of an insane delusion, where there was no evidence that he was in a paroxysm of rage when the will was made.

Upon the evidence disclosed by the record, and under the authorities cited, we are clearly of the opinion that the trial court properly directed a verdict for the ·respondents.

The judgment, therefore, should be, and is accordingly affirmed.   All concur.